UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BROWER-MCLEAN, ET AL.,

        Plaintiffs,

v.

JERSEY CITY, ET AL.,

        Defendants.

Civil Action No. 05-5150

**MEMORANDUM & ORDER**

RECEIVED

MAR 1 2 2009

AT 8:30_____M
WILLIAM T. WALSH
CLERK

SHERIDAN, U.S.D.J.

    This matter comes before the Court on defendant Adel Mikhaeil's motion for summary judgment on the grounds that he is immune from liability under 42 U.S.C. § 1983. This Court reviewed the parties' briefing of the issue and found that there was an insufficient factual record to decide the motion. As a result, the Court held a hearing on February 10, 2009, at which Mikhaeil testified, and used other testimony submitted in order to decide this matter (including a transcript of the January 30, 2008 deposition of Mikhaeil). After reviewing all this evidence, the Court concludes that Mikhaeil is entitled to qualified immunity and grants his motion for summary judgment.

I.

    For the three weeks prior to the search of Brower McLean's home, Detective Edward Rossiter was pursuing Terrance Culbreath, a fugitive. In order to acquire information about Culbreath, Rossiter contacted Mikhaeil, a bounty hunter who was also searching for Culbreath.

Mikhaeil reported to Rossiter that he had seen Culbreath several times and passed along certain information about his whereabouts from an informer, Gregory Phillips.

On October 29, Mikhaeil and other bounty hunters accompanied Rossiter and other police officers to a search of Plaintiffs' residence to apprehend Culbreath. Rossiter was in charge of the operation. Rossiter had an arrest warrant for Culbreath. The warrant did not include the address of the Plaintiffs' home. Hence, the warrant did not authorize search of the house. Previously, the court found the police officers had qualified immunity because they relied on Rossiter for obtaining appropriate warning. According to Plaintiff's Complaint, Mikhaeil entered said residence and participated in the allegedly unlawful search for Culbreath. Rossiter testified that he told Mikhaeil not to enter the home. *See* Rossiter Depo. 61:15-16. At deposition, Mikhaeil agreed and testified that Rossiter told him "to wait outside." Mikhaeil Depo. 76:18-21; 81:25-82:2. Despite the instruction, Mikhaeil entered the home. At the hearing, Mikhaeil clarified that a police officer told him to wait by the residence's side door. Mikhaeil testified that a police officer told him to guard the door from inside while the police entered the residence. This is in conflict with his deposition where Mikhaeil said that he entered the house because he was curious. *Id.* 82:1. At both the deposition and the hearing, Mikhaeil testified that he was only in the hallway by the rear door, and he never entered the rooms of the house.[1] To the contrary, the plaintiffs indicate that they saw Mikhaeil throughout the house.

There is also a question regarding Mikhaeil's compensation from the operation. Plaintiffs appear to argue that in order to get paid, Mikhaeil would have to actively participate in the arrest

---

[1] *See, e.g.*, Mikhaeil Depo. 83:18-20 (Q: Did you go [sic] any other part of the house, other than the hallway by the side door? A: No.).

of a fugitive and would thus have an incentive to enter the house and get as close to the action as possible. At the hearing, Mikhaeil clarified that he would be paid for providing information leading to an arrest even if he was not present, although this is not at all clear from the deposition testimony. *See* Mikhaeil Depo. 55:3-60:18.

II.

The Supreme Court has held that certain private individuals acting under color of state law[2] may be entitled to qualified immunity as a good faith defense. *See Richardson v. McKnight*, 521 U.S. 399, 404 (1997). However, in *Richardson*, the Court declined to extend immunity to prison guards who were employees of a private, for-profit prison management firm. The decision made clear that this was a limited holding that applied only to the facts at issue. *Id.* at 413. The Court looked to the history and special policy concerns involved in suing government officials in order to determine if immunity applied. *Id.* at 404 (citing *Wyatt v. Cole*, 504 U.S. 158, 164 (1992)).

As to the history of immunity for bounty hunters, this Court finds little guidance, as the parties have not briefed the issue, and independent research has found little case law on point. One case that does consider the issue, *Akins v. U.S.*, 679 A.2d 1017 (D.C. 1996), held that a bondsman and a bounty hunter did not enjoy immunity. *Id.* at 1026. However, *Akins* is distinguishable, as the bondsman and bounty hunter involved were collaborating on their own to locate an individual who jumped bail, and the court found that they were not subject to state action guidelines under the Fourth Amendment. *Id.* at 1025.

---

[2] In its October 6, 2008 Opinion, this Court held that Mikhaeil had been acting under color of state law.

This Court next looks to the special policy concerns of immunity. The purpose of § 1983 immunity is to protect government's ability to perform its traditional functions by providing immunity where needed to preserve government's ability to serve the public good or to ensure that damages do not deter competent individuals from entering public service. *Richardson*, 521 U.S. at 407-408. Mindful of this purpose, in limiting its denial of immunity to the context in which it arose, the Supreme Court in *Richardson* observed, "The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id.* at 413.

After reviewing the evidence, this Court finds that Mikhaeil was acting under the close supervision of state officials and is therefore immune from this lawsuit. In holding that the prison guards in *Richardson* did not qualify for immunity, the Court emphasized that the guards had "limited direct supervision by the government." *Id.* This case is distinguishable because Mikhaeil was under more extensive supervision.

The search party included Rossiter and Mikhaeil, as well as other bounty hunters and police officers. Only Rossiter and Mikhaeil remain as defendants. The other bounty hunters were never served. The other police officers, Detectives Vulcano, Muller, Lazzara, and Stith, were granted immunity by this Court in its October 6, 2008 Opinion. Therein, this Court found that the officers reasonably believed that Rossiter had the necessary and legitimate authorization to carry out the search. Although the record is silent on Mikaheil and the warrant, this Court can infer that as an experienced bounty hunter, Mikhaeil too would have believed that the team leader, Rossiter, was acting pursuant to a legitimate warrant.

Second, while it appears that Mikhaeil may have defied the order of Rossiter to wait

-4-

outside, there were several other police officers present, and at his hearing, Mikhaeil testified that one of them told him to come inside to guard the door. Even if he came in solely to satisfy his curiosity, it is clear that Mikhaeil remained in the hallway, apart from Rossiter's and the officers' search for Culbreath. In keeping away from the search, Rossiter was acting under close official supervision. Finally, the plaintiffs attempt to argue that Mikhaeil needed to be front and center in the search for Culbreath in order to get paid for his work as bounty hunter, and therefore, he acted out of financial motivations, not at the behest of public officials. However, the record is not clear on this point, and based on the evidence, this Court can infer that Mikhaeil would have been paid for providing information leading to a fugitive arrest while waiting in the hall. Thus, the Court will not imply that Mikhaeil must have been motivated by selfish, financial reasons and is not entitled to qualified immunity.

In extending immunity to Mikhaeil, this Court's holding accords with the purposes behind the immunity doctrine. This Court does not hamper government's ability to perform its traditional functions, nor does this Court put at risk competent individuals entering the public service. *See Richardson*, 521 U.S. at 407-08. A bounty hunter providing information to help arrest a fugitive and then having a minimal role during that arrest, at which he was acting pursuant to a police officer's instructions, should not be liable for damages.

This Court limits its holding to the facts specific to this case. These facts indicate that Mikhaeil was acting under the close supervision of public officials and is therefore entitled to qualified immunity. Accordingly, Defendant Mikhaeil's motion for summary judgment is granted. All claims against him are hereby dismissed.

_____
PETER G. SHERIDAN, U.S.D.J.

outside, there were several other police officers present, and at his hearing, Mikhaeil testified that one of them told him to come inside to guard the door. Even if he came in solely to satisfy his curiosity, it is clear that Mikhaeil remained in the hallway, apart from Rossiter's and the officers' search for Culbreath. In keeping away from the search, Rossiter was acting under close official supervision. Finally, the plaintiffs attempt to argue that Mikhaeil needed to be front and center in the search for Culbreath in order to get paid for his work as bounty hunter, and therefore, he acted out of financial motivations, not at the behest of public officials. However, the record is not clear on this point, and based on the evidence, this Court can infer that Mikhaeil would have been paid for providing information leading to a fugitive arrest while waiting in the hall. Thus, the Court will not imply that Mikhaeil must have been motivated by selfish, financial reasons and is not entitled to qualified immunity.

In extending immunity to Mikhaeil, this Court's holding accords with the purposes behind the immunity doctrine. This Court does not hamper government's ability to perform its traditional functions, nor does this Court put at risk competent individuals entering the public service. *See Richardson*, 521 U.S. at 407-08. A bounty hunter providing information to help arrest a fugitive and then having a minimal role during that arrest, at which he was acting pursuant to a police officer's instructions, should not be liable for damages.

This Court limits its holding to the facts specific to this case. These facts indicate that Mikhaeil was acting under the close supervision of public officials and is therefore entitled to qualified immunity.

Accordingly, it is hereby

ORDERED that defendant Mikhaeil's motion for summary judgment (Docket No. 95) is granted. All claims against him are hereby dismissed.

3/12/09

PETER G. SHERIDAN, U.S.D.J.